IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TINA ANN P., )
)
               Plaintiff, )
)
v. ) 1:24CV77
)
LELAND DUDEK, )
Acting Commissioner of Social Security, )
)
               Defendant. )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tina Ann P. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on April 4, 2022, alleging a disability onset date of October 1, 2021. (Tr. at 37, 200-01.)[1] Her application was denied initially (Tr. at 102-12, 129-33) and upon reconsideration (Tr. at 113-22, 135-39). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 140-41.) On April 12, 2023, Plaintiff, along with her attorney, attended the subsequent

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

telephone hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 37-38, 53-101.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 48), and, on December 5, 2023, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since October 1, 2021, her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 40.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease of [the] cervical spine, thoracic spine, and lumbar spine; degenerative joint disease of the right knee and right shoulder; migraines, chronic sinusitis and residuals of COVID-19; [and] obesity[.]

(Tr. at 40.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 42-43.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with further limitations. Specifically, the ALJ found that Plaintiff required the following restrictions:

> Frequent right upper extremity (dominant) reaching (all directions), handling, and fingering; occasional stooping, kneeling, crouching, crawling, and balancing (as defined by DOT/SCO); occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; no exposure to hazards such as unprotected heights and dangerous machinery; frequent exposure to dust, fumes, gas odors, pulmonary irritants, frequent exposure to extremes of humidity, heat or cold. Noise exposure limited to moderate (as defined by DOT/SCO).

(Tr. at 43.) At step four of the analysis, the ALJ determined that Plaintiff's past relevant work did not exceed her RFC. Specifically, the ALJ found that Plaintiff remained capable of performing her past relevant work as an administrative clerk and her past composite job consisting of assistant manager and photocopy machine operator. (Tr. at 47.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 48.)

Plaintiff now contends that, in assessing her RFC, the ALJ "erred by failing to include, or explain the absence of, mental RFC limitations to account for Plaintiff's 'mild' limitations in three of the four Paragraph B criteria and 'nonsevere' mental impairments." (Pl.'s Br. [Doc. #9] at 3.) This contention relates to the ALJ's analysis of Plaintiff's depression and anxiety, which the ALJ addressed at step two of the analysis and found to be "nonsevere" impairments that did not cause "more than a minimal limitation" in Plaintiff's ability to do basic work activities. Specifically, at step two of the sequential analysis, the ALJ acknowledged that Plaintiff's depression and anxiety constituted medically determinable mental impairments. (Tr. at 40.) However, he further determined that these impairments, "considered singly and in combination, [did] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and [were] therefore nonsevere." (Tr. at 40.) As part of the analysis, the ALJ specifically considered the four broad areas of mental functioning, also known as the "paragraph B" criteria, set out in the regulations. (Tr. at 41); see also 20 C.F.R., Subpart P, Appendix 1, 12.00E. These areas of mental functioning are (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting and managing oneself. (See Tr. at 40-41.)

6

Case 1:24-cv-00077-JEP    Document 13    Filed 03/25/25    Page 6 of 12

For each of these areas, the ALJ must rate Plaintiff's degree of limitation as none, mild, moderate, marked, or extreme. 20 C.F.R., Part 404, Subpart P, Appendix 1, 12.00F(2).

Here, the ALJ determined that Plaintiff had no limitation in interacting with others, but had mild limitations in the other three functional areas. (Tr. at 41.) In making these findings, the ALJ set out his rationale at length:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. At the hearing, the claimant testified to being depressed on a daily basis, having anxiety, and being overwhelmed in the past at work. However, she also testified to having good memory, graduating high school with a diploma, and obtaining an associate degree. Additionally, the claimant testified to having a valid driver's license, and stated the ability to drive herself to run errands, bathe and dress independently, use the microwave, and do basic cleaning. Furthermore, the claimant reported the ability to prepare meals, shop in stores, pay bills and manage money (Exhibit 3E). Accordingly, these activities demonstrate her ability to understand, remember, or apply information.
>
> The next functional area is interacting with others. In this area, the claimant has no limitation. At the hearing, the claimant testified to being depressed on a daily basis and having anxiety. She also testified to living alone, but she has help from her family and boyfriend. Despite her mental health, the claimant is able to maintain a relationship, go to the grocery store, spend time with others in person, talk on the phone, attend church, and walk outside at times (Testimony and Exhibit 3E). Accordingly, the record supports no limitation in this area of functioning.
>
> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. At the hearing, the claimant testified to her mental health and explained getting overwhelmed at times and having some issues with her memory. She also testified to receiving help with some activities of daily living from her family and boyfriend. Despite her mental health, she testified to the ability to live alone, bathe and dress independently, do basic cleaning, use the microwave, drive, and go to the grocery store. Furthermore, in her function report, the claimant reported no problems with personal care, as well as the ability to prepare simple meals, do some household chores, drive, shop in store or by computer, pay bills, manage money, attend church, and interact with others in person, on the phone, or by email (Exhibit 3E). Accordingly, these activities demonstrate her ability to concentrate, persist,

7

> and maintain pace on tasks. The record supports no more than mild limitations in this area of functioning.
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. At the hearing, the claimant testified to her mental health and described symptoms of depression and anxiety. However, she also testified to living alone and stated the ability to bathe independently, do basic cleaning, use the microwave, drive, and go to the grocery store. Furthermore, she reported the ability to perform most activities of daily living in her function report (Exhibit 3E). Accordingly, the record supports no more than mild limitation in this area of functioning.
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).

(Tr. at 41 (emphasis omitted).) Notably, Plaintiff does not challenge the ALJ's step two determination or any of the substance of that evaluation. Rather, citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) and its progeny, she argues that the ALJ was required to address Plaintiff's "mild" paragraph B limitations when assessing Plaintiff's RFC, or explain the absence of corresponding limitations. (Pl.'s Br. at 4).

However, Plaintiff's argument that her mild limitations should have been accounted for in the RFC is not supported by the Fourth Circuit's decision in Mascio and or the weight of subsequent decisions in this Court. In Mascio, the Fourth Circuit held that if moderate limitations in concentration, persistence, or pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect

8

Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Mascio, 780 F.3d at 638 (internal citation omitted).

In the present case, unlike in Mascio, the ALJ found only mild, rather than moderate, restrictions in functioning. (Tr. at 41.) More recent cases in this District have held—almost universally—that "the weight of post-Mascio authority among the district courts in the Fourth Circuit does not favor extending Mascio to mild limitation[s]." Spradley v. Saul, No. 1:20CV337, 2021 WL 1739013, at *7 (M.D.N.C. May 3, 2021) (collecting cases); Pickett v. Kijakazi, No. 1:21CV500, 2022 WL 3908862, at *3-4 (M.D.N.C. Aug. 30, 2022); Baucom v. Saul, No. 1:18CV819, 2020 WL 978256, at *10 (M.D.N.C. Feb. 28, 2020).

Moreover, in this case the ALJ made these findings in the course of his discussion at step two of the sequential analysis, supporting his conclusion that Plaintiff's mental impairments "do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." (Tr. at 40.) See 20 C.F.R. § 404.1520a(d)(1) (providing that if the degree of limitation in the functional areas is only "none" or "mild," the impairment is not severe, unless the evidence otherwise indicates a more than minimal limitation in the ability to do basic work activities). This analysis differs from the typical Mascio scenario, in which the ALJ, having already identified one or more mental impairments as severe at step two, then performs a step three evaluation as to whether the degree of functional limitation resulting from Plaintiff's mental impairment(s) meets or equals a listed impairment. The typical Mascio challenge therefore stems from the ALJ's failure, or alleged failure, to include limitations from the claimants' severe impairments in the RFC.

9

This distinction is significant. "Basic work activities" are defined as functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to co-workers and supervisors, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b). Here, the ALJ found that Plaintiff's mental impairment was nonsevere, meaning that it resulted in "no more than a minimal limitation in [her] ability to do basic work activities." (Tr. at 41.) See Brownlee v. Saul, No. 1:18CV642, 2019 WL 3858652, at *7 (M.D.N.C. Aug. 16, 2019); Kimberly B. C. v. Kijakazi, No. 1:22CV617, 2023 WL 4974033, at *5-7 (M.D.N.C. Aug. 3, 2023).[4]

Finally, the Court notes that in this case, the ALJ did provide additional explanation in setting the RFC. See also 20 C.F.R. § 404.1523(c) (requiring that ALJs consider cumulative limitations from both severe and nonsevere impairments when assessing a claimant's RFC). First, the ALJ specifically noted that she "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual

---

[4] Plaintiff cites to McMichael v. Colvin, No. 1:15-CV-4556768, 2016 WL 4556768 (M.D.N.C. Aug. 31, 2016), in support of her contention. However, in that case, the Court found that the ALJ had failed to consider a mental disorders examination:

> The C & P mental disorders examination, also conducted in September 2014, indicated that Plaintiff's mental disorder caused an occupational and social impairment which "reduced [Plaintiffs] reliability and productivity." Moreover, the following symptoms were checked: depressed mood; anxiety; panic attacks that occur weekly or less often; chronic sleep impairment; mild memory loss, such as forgetting names, directions or recent events; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or work like setting; impaired impulse control, such as unprovoked irritability with periods of violence. It was concluded at the end of the examination that Plaintiff's "[a]nxiety depression irritability and other mental health symptoms ha[d] increased ... [and] [m]ost symptoms noted above are now in the moderate range, occasionally moderately severe." Without discussing this evidence the ALJ determined that Plaintiffs adjustment disorder was non-severe.

Id. at *3 (internal citations omitted). Thus, in that case, the ALJ's failure to include Plaintiff's mental impairment as a severe impairment at step two, and related failure to include any mental limitations in the RFC, was not sufficiently explained and was not supported by substantial evidence in light of the un-mentioned mental examination. Plaintiff has not identified any such issue in the present case.

functional capacity." (Tr. at 40.) The ALJ noted Plaintiff's depression and anxiety, but found that Plaintiff's mental impairments "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (Tr. at 40.) The ALJ also explained that "[t]he following residual function capacity assessment reflects the degree of limitation [that he] found in the 'paragraph B' mental function analysis." (Tr. at 42.) In setting the RFC, the ALJ again noted Plaintiff's activities of daily living. (Tr. at 44-45.) The ALJ also noted the argument of Plaintiff's representative that Plaintiff stopped working due to chronic sinusitis issues and depression, but the ALJ found that while Plaintiff's provider "found it medically necessary for her to be absent from work in May 2021 due to sinusitis and COVID-19 . . . the same provider found [Plaintiff] capable of performing most of her job functions." (Tr. at 44, 596-98.)[5] In addition, the ALJ found "largely persuasive" the determinations of the state agency consultants. (Tr. at 46.) In this regard, Dr. Jermaine Robertson evaluated Plaintiff's anxiety and depression and the related medical records, and found that Plaintiff's "[p]sychological limitations appear minimal," that Plaintiff is "mentally capable of engaging in work-related activity," and that Plaintiff is not limited to unskilled work. (Tr. at 106, 110.) Similarly, Dr. Brian McIntyre analyzed Plaintiff's depression and anxiety and the related medical records, and likewise found only mild limitations and agreed that Plaintiff was "mentally capable of engaging in work-related activity" and was not limited to unskilled work. (Tr. at 116-17, 121.) The ALJ relied on those evaluations in concluding that Plaintiff did not have any work-related

---

[5] In that evaluation, Plaintiff's provider noted that she should be out for intermittent FMLA leave related to her chronic sinusitis, but otherwise was able to perform all job functions, including effectively communicating with co-workers and the public, working under stressful conditions, comprehending and abiding by policies and directions, independently making decisions regarding assignments, and reading and interpreting reports and legal documents. (Tr. at 596-98.)

limitations as a result of any mental impairments, and specifically found that "the record supports non-severe mental impairments." (Tr. at 46.) Thus, the ALJ explained why there was no mental limitation in Plaintiff's RFC, and Plaintiff's Mascio challenge is without basis. See also Shinaberry v. Saul, 952 F.3d 113 (4th Cir. 2020). As such, Plaintiff's sole contention fails to provide a basis for remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #9] is DENIED, that Defendant's Dispositive Brief [Doc. #10] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 25th day of March, 2025.

/s/ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge